# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. BROCK, Minor.

UNPUBLISHED
August 13, 2015

No. 324767
Livingston Circuit Court
Family Division
LC No. 13-014610-NA

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right from an order terminating her parental rights to her son pursuant to MCL 712A.19b(3)(g) (failure to provide proper care and custody), MCL 712A.19b(3)(h) (parent imprisoned and child will be deprived of home for two years), and MCL 712A.19b(3)(j) (reasonable likelihood of harm to the child). We affirm.

On August 31, 2013, respondent and the minor child's father were babysitting a four-year-old niece, TS, when they suspected she ingested Suboxone that they had brought into the home. Respondent called several friends for advice. One friend came over and forced TS to vomit. Another friend contacted poison control and relayed to respondent that poison control had said that TS should be taken to the emergency room if she exhibited symptoms of taking Suboxone. Respondent admitted that TS exhibited symptoms and the record shows that TS vomited a second time, was lethargic, and was glassy-eyed. However, respondent did not take her to the emergency room. Instead, respondent told TS's legal guardian that TS was sick and should go to the hospital. She did not inform her that TS had ingested Suboxone. TS's guardian called 911 later in the evening when TS became unresponsive and was not breathing. She was pronounced dead at the scene. The autopsy indicated she died of a Suboxone overdose.

Respondent eventually acknowledged the above chain of events. She was arrested and incarcerated on January 17, 2014. Thereafter, she pleaded guilty to involuntary manslaughter and second-degree child abuse, and was imprisoned. Her earliest release date is June 16, 2018.

At the termination hearing, respondent testified about her relationship with the minor's father, who she acknowledged had a criminal history, a substance abuse history, and a history of domestic violence toward her. She also testified to her own substance abuse, which included use of alcohol, benzodiazepines (Xanax), opiates (heroin), amphetamines, marijuana, and tobacco products. She acknowledged that her criminal history included juvenile charges stemming from her use of alcohol and controlled substances, and that she had been dismissed from a residential treatment program after relapsing and testing positive for methamphetamine.

-1-

Prior to her incarceration, respondent was provided with supervised parenting time with her son. However, she missed six or seven of the nineteen offered visits. She scheduled a substance abuse assessment and was in the process of rescheduling a psychological evaluation. She voluntarily agreed to abide by a parent agency treatment plan (PATP).

After she was incarcerated, respondent participated in services available at the jail, including AA and NA meetings, the Opiates Project, and MRT therapy. She also completed the psychological evaluation and substance abuse assessment while in jail.

According to the psychological report, respondent had a personality disorder that was associated with a history of significant addiction. The report also indicated that respondent would be unable "to provide good parenting for her child as long as she has problems with her addiction and her personality disorder is not addressed in counseling." The report "very strongly" recommended that respondent "be referred for substance abuse counseling while in prison" and indicated that "[h]er personality disorder can also be addressed in substance abuse counseling within the prison system." Further, it indicated that respondent's "psychological immaturity and poor judgment associated with her personality disorder will be her major psychological weaknesses," and that substance abuse was certainly also a major weakness. Karen Bergbower, an expert in substance abuse disorders and co-occurring disorders, indicated that respondent's personality disorder and addiction, if not properly treated, would interfere with her ability to parent. She said that the treatment for someone with an addiction and a co-occurring personality disorder needed to be long-term and very structured.

According to the substance abuse assessment, respondent was diagnosed with alcohol abuse in early remission, marijuana abuse in early remission, nicotine dependence in early remission, and opiate dependence in full remission. The assessor recommended that after her release from incarceration, respondent submit to weekly random alcohol and drug urine screens for a minimum of three months. The assessor also recommended that respondent "participate in weekly outpatient treatment for at least a year to identify the underlying issues of substance abuse to help her maintain and lengthen her sobriety." Further, it was recommended that respondent participate in a weekly support group in conjunction with her outpatient treatment. Finally, it was recommended that respondent "complete a psychiatric evaluation if she continues to experience serious depression and anxiety." In addition, Bergbower recommended that respondent receive a minimum of one year of substance abuse treatment. She said that the treatment must also appropriately address the co-occurring mental health issue, i.e., the personality disorder. She was not confident that respondent would respond well to treatment given that she had had several opportunities and did not respond well to them.

After transfer from jail to a correctional facility, respondent again was provided with services, including a parenting class and a domestic violence class. Respondent also testified that she was on the wait list for AA and would be eligible for counseling at some point and an inpatient treatment program during the last year of her imprisonment.

Respondent testified that the last time she saw her son was when he was seven months old. She acknowledged that he would be five years old upon her earliest release date. Bergbower testified that the child was reliant on his caregivers and that attachment was critical at his age. She opined that the glass windows in a prison would impair his ability to form an

attachment. She also did not believe it was in his best interests to wait until he was five years old to be with an appropriate caregiver.

The trial court found by clear and convincing evidence that there were grounds to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(g), (h), and (j). On appeal, respondent first argues that termination was improper because petitioner failed to provide her with services for reunification while she was incarcerated. We disagree.

To preserve a challenge to the adequacy of the reunification efforts, a respondent must object or indicate that the services provided are inadequate. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). "The time for asserting the need for accommodation in services is when the court adopts a service plan. . . ." *Id.*, quoting *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000). Before this appeal, respondent did not object or indicate that the services provided in this case were inadequate. Thus, this argument is unpreserved.

However, we note that the record belies respondent's contention that petitioner failed to provide reasonable reunification services. "Generally, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). "The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "'Reasonable efforts to reunify the child and family must be made in *all* cases' except those involving aggravated circumstances . . . ." *Id.* at 152 (citation omitted) (emphasis in original). Thus, "a court may not terminate parental rights on the basis of 'circumstances and missing information directly attributable to respondent's lack of meaningful prior participation.'" *Id.* at 159-160, quoting *In re Rood*, 483 Mich 73, 119; 763 NW2d 587 (2009). However, if a respondent is unable to participate there is a "hole" in the evidence supporting a termination decision. *In re Rood*, 483 Mich at 127.

In this case, respondent was provided with numerous services aimed at reunification. The record shows that before her incarceration, she had supervised parenting time, random drug screens, and referrals for a psychological evaluation and a substance abuse assessment. Respondent was also encouraged to complete a mental health intake, which she failed to do. After respondent was incarcerated she was able to complete the psychological evaluation and substance abuse assessment. Further, respondent's testimony indicates that she participated in AA and NA meetings, the Opiates Project, and MRT therapy sessions. Then, when she was moved to a correctional facility, she was placed on a wait list for AA and NA, attended a parenting skills class, and was participating in a domestic violence class. Respondent's testimony indicated that a reason for her participation in those services was her attempt to comply with the PATP. Moreover, respondent testified that she will be eligible for additional services, such as counseling and the inpatient treatment program, as they become available to her. She admitted that she has been provided with numerous services and nothing in this record suggests that additional services would be available. On this record, we conclude that respondent was provided with reasonable reunification services before and during her incarceration.

Next, respondent argues that the trial court erred in finding by clear and convincing evidence that termination was proper pursuant to MCL 712A.19b(3)(g), (h), and (j). We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence. MCR 3.977(K); *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id.* at 296-297.

MCL 712A.19b(3)(g), (h), and (j) provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> (h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The evidence showed that without regard to her intent, respondent was unable to provide proper care and custody for her son. He was removed from her home after his cousin died of a drug overdose after she ingested a Suboxone pill while in respondent's care and was not provided with proper medical treatment. As a result of this incident, respondent was incarcerated on January 17, 2014. During her incarceration, she was unable to provide any care or custody for her son. Further, after pleading guilty to involuntary manslaughter and second-degree child abuse, respondent was imprisoned for 53 months to 15 years with credit for 181 days served. Because of her incarceration, her son would be deprived of a normal home for a period exceeding 2 years. See MCL 712A.19b(3)(h). In addition, given that her son was about four months old when he was removed, about seven months old when he last saw respondent, and will be about five years old before respondent is even released from incarceration, the trial court did not err in finding that, given his age, there is no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time. See MCL 712A.19b(b)(3)(g) and (h). Moreover, as the trial court noted, respondent had a significant history of substance abuse and substance abuse-related criminal convictions. She had failed to show benefit from earlier treatment programs. Further, respondent had a personality disorder,

and these conditions would require, at a minimum, a year of intense treatment that, it appears, would not be possible to start until *after* respondent was released from prison. Accordingly, the trial court did not clearly err in finding that termination was proper under subsections (g) and (h).

Moreover, termination was proper pursuant to MCL 712A.19b(3)(j) because respondent's long-history of substance abuse, criminal convictions resulting from substance abuse, and inability to benefit from substance abuse treatment all indicate that if her son is returned she will continue to use substances. Bergbower testified that respondent's ability to succeed in treatment was poor, given her history. Further, respondent's actions during the incident with TS show that respondent was unable to provide proper supervision of a young child. Although respondent asserts that she would make different choices now, nothing in this record indicates that she would make the appropriate choices in the future. Accordingly, on these facts the trial court did not err in finding that termination was proper pursuant to MCL 712A.19b(3)(j).

Although respondent does not challenge the trial court's findings as to best interests, we conclude that, based on the entire record, the court's best interests findings were not clearly erroneous. There was no evidence presented of a current bond between respondent and the child. Instead, the testimony was that she had not seen him in over nine months. Further, there was testimony that respondent would be unable to provide proper care and custody until the child was, at a minimum, five years old. However, even that distant reunification date was uncertain because of the testimony about respondent's need for post-release substance abuse monitoring and treatment as well as treatment for her personality disorder. The trial court found that the child should not have to wait for permanence and stability.

Affirmed.

/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro